

# WINSTON & STRAWN LLP

35 WEST WACKER
CHICAGO, ILLINOIS 60601-9703

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

99 GRESHAM STREET
LONDON EC2V 7NG

JENNIFER L. MALIN
(212) 294-6622
jmalin@winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

(212) 294-6700

FACSIMILE (212) 294-4700

www.winston.com

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-154

25 AVENUE MARCEAU
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-58

1700 K STREET, N.W.
WASHINGTON, D.C. 20006-3817

February 26, 2008

*[Handwritten endorsement: Pre-motion conference waived for Grant Thornton. File motion by April 4 on same schedule as updates Tarragon defendants. SO ORDERED. /s/ 2-27-08]*

**VIA HAND DELIVERY**

The Honorable P. Kevin Castel
United States Courthouse
Southern District of New York
500 Pearl Street, Room 2260
New York, New York 10007

**MEMO ENDORSED**

Re:   *In re Tarragon Corporation Securities Litigation* (07 Civ. 7972)

Dear Judge Castel:

   We represent Defendant Grant Thornton LLP ("Grant Thornton") in the above-referenced matter. We write to request a pre-motion conference in connection with a motion to dismiss Plaintiffs' Amended Complaint or, in the alternative, that the requirement for a pre-motion conference be waived. Grant Thornton intends to move to dismiss the claim against it in the Amended Class Action Complaint pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6), as well as the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4.

**A.   Procedural History**

   This case was filed initially in September 2007 against several defendants: Tarragon Corporation, William S. Friedman, Robert P. Rothenberg, Erin Davis Pickens, and Beachwold, L.P ("Tarragon Defendants"). By order dated December 6, 2007, the Court granted Lead Plaintiff leave to file an Amended Complaint by January 18, 2008, and adjourned the Tarragon Defendants' time to answer or move until 45 days after the filing of the amended complaint. The Amended Complaint was filed on January 18, 2008. On February 19, 2008, the Tarragon Defendants requested that the Court schedule a pre-motion conference or, in the alternative, that the requirement for a pre-motion conference be waived. Pursuant to the Court's endorsement dated February 20, 2008, the Court waived its conference requirement and ordered that the Tarragon Defendants' motion to dismiss be filed by April 4, 2008.

WINSTON & STRAWN LLP

The Honorable P. Kevin Castel
February 26, 2008
Page 2

On February 7, 2008, Plaintiff served Grant Thornton, Tarragon Corporation's outside auditor, with the Amended Class Action Complaint, naming Grant Thornton as an additional defendant. Before then, Grant Thornton had not been a party to this action. Grant Thornton's current deadline to respond to Plaintiffs' Amended Complaint is February 27, 2008.

### B.   Grant Thornton's Motion To Dismiss

Plaintiff asserts only one claim against Grant Thornton: a claim for violation of §10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. Grant Thornton seeks leave to file a motion to dismiss this claim, which, if granted, would end Grant Thornton's involvement in this litigation.

Grant Thornton intends to move to dismiss the claim against it on several independent grounds, including the following: (1) Plaintiffs do not adequately plead scienter; (2) Plaintiffs do not plead their fraud allegation with particularity, as required by Fed. R. Civ. P. 9(b); (3) Plaintiffs have failed to plead loss causation; and (4) for certain members of the putative class, Plaintiffs cannot possibly show reliance on statements by Grant Thornton. Each of these grounds is briefly discussed below.

#### 1.   Plaintiffs Have Failed To Adequately Plead Scienter

To plead scienter in a 10(b) action, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). In the Second Circuit, a "plaintiff may satisfy this requirement by alleging facts ... constituting strong circumstantial evidence of conscious misbehavior or recklessness." *See ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

As the Supreme Court recently explained, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). "To qualify as 'strong' within the intendment of 21 D(b)(2), . . . an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of non-fraudulent intent." 127 S. Ct. at 2504-05.

Mere allegations that an auditor violated professional standards or that financial statements were not in compliance with Generally Accepted Accounting Principles ("GAAP"), "without corresponding fraudulent intent," are not sufficient to state a securities fraud claim under Section 10(b). *Chill v. General Electric Co.*, 101 F.3d 263, 270 (2d Cir. 1996); *Deephaven Private Placement Trading, Ltd. v. Grant Thornton*, 454 F.3d 1168, 1176 (10th Cir. 2006) ("Simply alleging as Investors do, that GAAP violations in 1999 financial statements rendered [the audit] opinion materially false or misleading is inadequate."). For recklessness to suffice in a claim against an auditor, the plaintiff's focus must be on the alleged conduct *by the auditor*, and that conduct must be "highly unreasonable," representing "an extreme departure

WINSTON & STRAWN LLP

The Honorable P. Kevin Castel
February 26, 2008
Page 3

from the standards of ordinary care." *Chill*, 101 F.3d at 269; *see also In re Carter Wallace, Inc. Sec. Litig.*, 220 F.3d 36, 39-40 (2d Cir. 2000). The auditor's conduct must "approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000). Moreover, under *Tellabs*, such an inference of recklessness must be more than plausible or reasonable; it must be at least as compelling as any opposing inference. *See In re Bayou Hedge Fund Litig.*, Nos. 06-MDL-1755 and 06-CV-2943 (CM), 2007 WL 2319127, at *8 (S.D.N.Y. July 31, 2007) (finding that the *Tellabs* heightened standard applies to allegations of recklessness).

Plaintiffs' allegations fall far short of this standard. They have not alleged any facts that could support a strong inference that Grant Thornton knew there were errors in Tarragon's financial statements when it audited them but decided to turn a blind eye. At most, Plaintiffs contend that the financial statements Grant Thornton audited contained isolated misapplications of complex accounting standards, and that Tarragon restated its financial statements when it and Grant Thornton learned of the errors. *See* Am. Compl. ¶¶ 13, 24, 37, 40-42, 50. It is not only plausible, but far more likely, that these accounting errors were not the result of an intentional effort to deceive the investing public, but rather ordinary, good-faith judgments that later were corrected. Such general allegations of less-than-perfect accounting "without corresponding fraudulent intent do not suffice to state a securities fraud claim." *Rothman*, 220 F.3d at 98 (internal quotations omitted); *Chill*, 101 F.3d at 270.

### 2. Plaintiffs Have Failed To Comply With Rule 9(b)

To plead a claim under Section 10(b), Plaintiffs must identify each allegedly misleading statement and explain *why* it is misleading. Fed. R. Civ. P. 9(b); 15 U.S.C. § 78u-4(b)(1). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See San Leandro Emerg. Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (plaintiffs did not satisfy Rule 9(b) when they did not allege "circumstances to support their allegation that the allegedly false statements ... were false at the time made"). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI*, 493 F.3d at 99.

Plaintiffs have not met this fundamental pleading burden. They have identified only two statements by Grant Thornton: its audit opinions on Tarragon's 2004 and 2005 financial statements, stating that its audits were performed in accordance with applicable auditing standards and that, in Grant Thornton's opinion, the financial statements presented fairly, in all material respects, Tarragon's financial position, in conformity with GAAP. *See* Am. Compl. ¶¶ 24, 37. Whether and how these audit opinions were false turns on whether and how Grant Thornton's audits failed to comply with the applicable auditing standards.

Plaintiffs do not cite a single auditing standard anywhere in their complaint, much less explain how Grant Thornton's audit failed to comply with it. The closest Plaintiffs come is in recounting a hearsay statement from a Bloomberg report, which stated that a Public Company

**WINSTON & STRAWN** LLP

The Honorable P. Kevin Castel
February 26, 2008
Page 4

Accounting Oversight Board report had criticized in general terms Grant Thornton's fiscal year 2005 audit of Tarragon. *Id.* ¶ 102. This thin reed can hardly be enough to sustain a fraud claim. Plaintiffs' failure to provide any factual allegation relating to whether or how Grant Thornton's audits failed to comply with professional standards requires dismissal under Rule 9(b).

### 3. Plaintiffs Have Failed To Plead Loss Causation

In addition to failing to plead scienter and state their fraud claim with particularity, Plaintiffs have not adequately alleged "that the act or omission of the defendant . . . caused the loss for which [they] seek to recover damages." 15 U.S.C. § 78u-4(b)(4). Plaintiffs must specifically plead "a causal connection between the material misrepresentation and the loss" they allegedly suffered. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). In so doing, the complaint "must allege facts that support an inference that [defendant's conduct] concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of the loss absent fraud." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (complaint must allege sufficient facts to make the claim at least "plausible"). This requirement reflects the fact that the securities laws serve to protect against those economic losses that misrepresentations actually cause, not "to provide investors with broad insurance" against market losses. *Dura*, 544 U.S. at 345. As *Dura* makes clear, loss causation in a stock case requires a connection between the alleged misrepresentation and both price *inflation* and price *decline*: if the stockholder sells "before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." 544 U.S. at 342.

Plaintiffs have failed to allege loss causation against Grant Thornton with respect their losses on Tarragon's common stock. In the first place, they do not allege that the two statements Grant Thornton made had any positive or inflationary impact on the stock price in the marketplace. The only allegation they make about the stock price going *up* relates to an announcement by the company itself on January 5, 2005, two months before Grant Thornton made any statement at all. *See* Am. Compl. ¶ 21. If Grant Thornton's statements did not cause any price inflation, they cannot possibly have caused any loss.

Further, Plaintiffs make no effort to tie their losses to the disclosure of information that should have been disclosed back in 2004 and 2005—the only years to which Grant Thornton's alleged misstatements relate. *Id.* ¶¶ 92-97 (allegations relating to "loss causation"). Plaintiffs contend that Tarragon's stock price began its "steep descent" in 2007, when adverse information concerning the viability of a particular ongoing construction project "began to leak to the investing public." *Id.* ¶ 95. Indeed, they acknowledge that the stock price drop that marks the end of the class period followed announcements by the company relating to the deterioration of the homebuilding industry and real estate credit markets and its impact on Tarragon's liquidity. *Id.* ¶¶ 60-62, 95-97. Plaintiffs have not alleged that those announcements revealed any "relevant truth" that dated back to 2004 and 2005 and was concealed by Grant Thornton's audit opinions on the 2004 and 2005 financial statements. To the contrary, Plaintiffs'

**WINSTON & STRAWN** LLP

The Honorable P. Kevin Castel
February 26, 2008
Page 5

allegations make clear that the problems with Tarragon's liquidity, debt covenants and defaults, and projections all emerged in 2007, long after the last alleged statement by Grant Thornton. *Id.* ¶¶ 63-67. Accordingly, there is no plausible allegation here that Grant Thornton's statements "caused" the losses Plaintiffs experienced when the stock price suffered its "steep descent."

### 4. Whether or Not Plaintiffs Are Ultimately Able To Invoke a Presumption of Reliance, They Still Cannot Possibly Prove Reliance for at Least A Portion of the Putative Class

In order to establish reliance, Plaintiffs must allege that "but for the claimed misrepresentations or omissions, the plaintiff would not entered into the detrimental securities transaction." *Emergent Capital Inv. Mgmt, LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Although the Class Period purportedly begins on January 5, 2005, that date is several months *before* the first Grant Thornton statement alleged in the Amended Complaint. According to Plaintiffs, Grant Thornton's first alleged misrepresentation was in its audit opinion dated March 15, 2005, which was included in Tarragon's 2004 Form 10-K filed the next day. *See* Am. Compl. ¶ 24. Plaintiffs cannot possibly establish reliance on any alleged fraud by Grant Thornton before that first statement was made. For this reason alone, Plaintiffs' Section 10(b) claim against Grant Thornton should be dismissed at least to the extent that it is based on stock purchases between January 5, 2005 and March 16, 2005.

### C. Conclusion

For the foregoing reasons, Grant Thornton respectfully requests that the Court schedule a pre-motion conference in connection with its motion to dismiss Plaintiffs' Amended Complaint or, alternatively, that the requirement for a pre-motion conference be waived. In the event that the Court waives its requirement for a pre-motion conference, Grant Thornton proposes that the Court set the same briefing schedule for its motion to dismiss that it set for the Tarragon Defendants.

Respectfully submitted,

Jennifer L. Malin

cc:  Jeffrey Abraham, Esq. (via email)
     Eliot Lauer, Esq. (via email)

NY:1164848.1