UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

In re TARRAGON CORPORATION
SECURITIES LITIGATION

--------------------------------------------------------------------- X

:       07 Civ. 7972 (PKC)
:
:
:       Oral Argument Requested
:

**THE TARRAGON DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

Eliot Lauer
Theresa A. Foudy
Daniel R. Marcus
**CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Tel:  (212) 696-6000
Fax:  (212) 697-1559

*Attorneys for Defendants Tarragon Corporation,
William S. Friedman, Robert P. Rothenberg, Erin
Davis Pickens, and Beachwold Partners, L.P.*

## TABLE OF CONTENTS

**Page #**

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS............................................................................... 3

ARGUMENT.................................................................................................. 7

I.    PLAINTIFF DOES NOT PLEAD FRAUD WITH PARTICULARITY OR RAISE THE STRONG INFERENCE OF SCIENTER REQUIRED BY THE PSLRA ........................ 7

    A.  The Amended Complaint Fails To Allege Facts Describing The Alleged Fraud With The Level Of Particularity Required By Rule 9(b) And The PSLRA ........................... 8

          1.    The Allegations Regarding Tarragon's Restatements Do Not Plead With Particularity Facts Giving Rise To A Fraud....................................8

          2.    Plaintiff's Additional Allegations Regarding So-Called "Concealed Facts" Fail To Satisfy The Pleading Requirements For A Securities Fraud Claim.................................10

                 (a)    Plaintiff Does Not Allege Facts Showing That Tarragon's Impairment Charges And Were Other Write-Downs Untimely...11

                 (b)    Plaintiff Alleges No Facts Showing That Tarragon "Concealed" Liquidity Issues..............................12

                 (c)    Plaintiff Alleges No Facts Showing That Tarragon Improperly Recognized Revenue...........................12

                 (d)    Plaintiff Fails To Allege That Tarragon Concealed Non-Compliance With Debt Covenants As Of June 30, 2007.....13

                 (e)    Plaintiff's Allegations Regarding 2007 Projections Lack Particularity...................................13

    B.  The Amended Complaint Fails To Raise Any Inference Of Scienter, Much Less The Strong Inference Required By The PSLRA ................................................... 14

          1.    Plaintiff Has Failed To Adequately Plead A Fraudulent Motive...........15

                   (a)    Tarragon's Use Of Stock To Acquire Assets And Reduce Debt Does Not Raise A Strong Inference of Scienter.....15

                 (b)    Defendants' Alleged Desire To Maintain Compliance With Financial Covenants Is Insufficient To Plead Scienter.......18

## TABLE OF CONTENTS (cont'd)

(c)    Plaintiff's Allegation Regarding Bonuses
Does Not Raise A Strong Inference Of Scienter....................19

(d)    Plaintiff's Allegation That A Substantial Portion
Of Friedman's Wealth Was "Tied Up" In
Tarragon Stock Fails To Plead Scienter.............................19

(e)    The Tarragon Defendants' Stock Ownership History Belies
Any Inference That They Were Motivated To Commit Fraud.....20

2.    Plaintiff Does Not Plead With Particularity Facts
That Constitute Strong Circumstantial
Evidence Of Conscious Misbehavior Or Recklessness.....................21

II.    PLAINTIFF'S SECTION 20(A) CLAIM FAILS AS WELL .......................................... 22

**CONCLUSION** ............................................................................................................ **25**

## TABLE OF AUTHORITIES

Page #

**Cases**

Acito v. IMCERA Group, Inc.,
    47 F.3d 47 (2d Cir. 1995) ................................................................................. 19

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
    493 F.3d 87 (2d Cir. 2007) ............................................................................... 15

Boguslavsky v. Kaplan,
    159 F.3d 715 (2d Cir. 1998) ............................................................................. 23

Burstyn v. Worldwide Xceed Group, Inc.,
    No. 01 Civ. 1125 (GEL), 2002 U.S. Dist. LEXIS 18555 (S.D.N.Y. Sept. 30, 2002).............. 20

Caiafa v. Sea Containers, Ltd.,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007) ............................................................. 18

Coates v. Heartland Wireless Commc'ns, Inc.,
    26 F. Supp. 2d 910 (N.D. Tex. 1998) .............................................................. 21

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991) ................................................................................. 3

Cromer Fin. Ltd. v. Berger,
    137 F. Supp. 2d 452 (S.D.N.Y. 2001) ............................................................. 23

Druskin v. Answerthink, Inc.,
    299 F. Supp. 2d 1307 (S.D. Fl. 2004) ............................................................. 21

Ganino v. Citizens Utils. Co.,
    228 F.3d 154 (2d Cir. 2000) ............................................................................. 15

Honeyman v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.),
    220 F.3d 36 (2d Cir. 2000) ............................................................................... 13

I. Meyer Pincus & Assocs., P. C. v. Oppenheimer & Co.,
    936 F.2d 759 (2d Cir. 1991) ............................................................................... 3

In re AOL Time Warner Sec. & "ERISA" Litig.,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) ............................................................. 16

In re BISYS Sec. Litig.,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............................................................... 8

In re Carter-Wallace, Inc. Sec. Litig.,
 150 F.3d 153 (2d Cir. 1998) ........................................................................ 8

In re Credit Acceptance Corp. Sec. Litig.,
 50 F. Supp. 2d 662 (E.D. Mich. 1999)........................................................ 21

In re Cross Media Mktg. Corp. Sec. Litig.,
 314 F. Supp. 2d 256 (S.D.N.Y. 2004) ........................................................ 18

In re DRDGold Ltd. Sec. Litig.,
 472 F. Supp. 2d 562 (S.D.N.Y. 2007) ........................................................ 16

In re Duane Reade Inc. Sec. Litig.,
 No. 02 Civ. 6478, 2003 U.S. Dist. LEXIS 21319 (S.D.N.Y. Nov. 25, 2003) .......................... 17

In re Geopharma Inc.,
 399 F. Supp. 2d 432 (S.D.N.Y. 2005) .................................................. 17, 19

In re Glenayre Techs., Inc. Sec. Litig.,
 No. 96 Civ. 8252 (HB), 1998 U.S. Dist. LEXIS 20344 (S.D.N.Y. Dec. 30, 1998),
 aff'd sub nom., Kwalbrun v. Glenayre Techs., Inc., 201 F.3d 431 (2d Cir. 1999)................... 21

In re Goodyear Tire & Rubber Co. Sec. Litig.,
 436 F. Supp. 2d 873 (N.D. Oh. 2006)......................................................... 22

In re Health Mgmt. Sys., Sec. Litig.,
 No. 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061 (S.D.N.Y. June 1, 1998).............. 19, 21

In re Health Mgmt., Inc. Sec. Litig.,
 970 F. Supp. 192 (E.D.N.Y. 1997) ............................................................. 19

In re Initial Public Offering Sec. Litig.,
 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................................................ 11

In re Interpublic Sec. Litig.,
 No. 02 Civ. 6527 (DLC), 2003 U.S. Dist. LEXIS 8844 (S.D.N.Y. May 29, 2003) ................. 16

In re Livent Sec. Litig.,
 78 F. Supp. 2d 194 (S.D.N.Y. 1999) .......................................................... 23

In re Merrill Lynch & Co.,
 273 F. Supp. 2d 351 (S.D.N.Y. 2003) .......................................................... 3

In re NDCHealth Corp., Inc. Sec. Litig.,
 No. 1:04-cv-0970-WSD, 2005 U.S. Dist. LEXIS 43860 (N.D. Ga. July 27, 2005)................ 22

In re Nokia Oyj (Nokia Corp.) Sec. Litig.,
 423 F. Supp. 2d 364 (S.D.N.Y. 2006) ........................................................ 14

In re Openwave Sys. Sec. Litig.,
  No. 07 Civ. 1309 (DLC), 2007 U.S. Dist. LEXIS 80558 (S.D.N.Y. Oct. 31, 2007) ................ 22

In re Sierra Wireless, Inc. Sec. Litig.,
  482 F. Supp. 2d 365 (S.D.N.Y. 2007) ................................................................ 7, 8

In re TwinLab Corp. Sec. Litig.,
  103 F. Supp. 2d 193 (E.D.N.Y. 2000) ............................................................ 8, 23, 24

In re Van Der Moolen Holding N.V. Sec. Litig.,
  405 F. Supp. 2d 388 (S.D.N.Y. 2005) ................................................................. 16

In re Yukos Oil Co. Sec. Litig.,
  No. 04 Civ. 5243 (WHP), 2006 U.S. Dist. LEXIS 78067 (S.D.N.Y. Oct. 25, 2006) .............. 16

Kalin v. Xanboo, Inc.,
  526 F. Supp. 2d 392 (S.D.N.Y. 2007) ................................................................. 23

Kalnit v. Eichler,
  264 F.3d 131 (2d Cir. 2001) ....................................................................... 15, 19

Marcus v. Frome,
  275 F. Supp. 2d 496 (S.D.N.Y. 2003) ................................................................. 22

Novak v. Kasaks,
  216 F.3d 300 (2d Cir. 2000) .................................................................... 12-15, 19

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Dynegy, Inc.
  (In re Dynegy, Inc.), 339 F. Supp. 2d 804 (S.D. Tex. 2004) ....................................... 20

Ressler v. Liz Claiborne, Inc.,
  75 F. Supp. 2d 43 (E.D.N.Y. 1998) ............................................................... 21, 22

Roberts v. Heim,
  670 F. Supp. 1466 (N.D. Cal. 1987) ................................................................. 24

Rombach v. Chang,
  355 F.3d 164 (2d Cir. 2004) ........................................................................ 23

Rothman v. Gregor,
  220 F.3d 81 (2d Cir. 2000) ......................................................................... 16

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,
  75 F.3d 801 (2d Cir. 1996) ......................................................................... 17

SEC v. First Jersey Sec., Inc.,
  101 F.3d 1450 (2d Cir. 1996) ....................................................................... 23

Shields v. Citytrust Bancorp, Inc.,
     25 F.3d 1124 (2d Cir. 1994) ......................................................................... 9, 10, 14

Stern v. Leucadia Nat'l Corp.,
     844 F.2d 997 (2d Cir. 1988) ........................................................................... 11

Stevelman v. Alias Research Inc.,
     174 F.3d 79 (2d Cir. 1999) ............................................................................ 8

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
     127 S. Ct. 2499 (2007)................................................................................... 8, 15

Wilson v. Bernstock,
     195 F. Supp. 2d 619 (D.N.J. 2002) ................................................................ 18

Yuan v. Bayard Drilling Techs., Inc.,
     96 F. Supp. 2d 1259 (W.D. Okla. 1999) ........................................................ 24

**Statutes/Rules**                                                              **Page #**

15 U.S.C. § 78u-4(b)(1)-(3)(A)........................................................................ 1, 8, 11, 14

15 U.S.C. § 78u-5(c)(1)(A)(i) ........................................................................... 14

17 C.F.R. § 230.405 ......................................................................................... 24

Fed. R. Civ. P. 12(b)(6)..................................................................................... 1

Fed. R. Civ. P. 9(b) .......................................................................................... 1

Defendants Tarragon Corporation ("Tarragon" or "the Company"), William S. Friedman, Robert P. Rothenberg, Erin Davis Pickens, and Beachwold Partners, L.P. (collectively, the "Tarragon Defendants") submit this memorandum in support of their motion to dismiss the Amended Complaint (the "Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim, and Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(1)-(3)(A) (the "PSLRA"), for failure to plead fraud with the requisite particularity.

## PRELIMINARY STATEMENT

On August 23, 2006, Tarragon, a homebuilder and real estate developer and services provider, announced that, as a result of a review by management and its independent accountants, it would restate its financial results to consolidate Ansonia Apartments, L.P. ("Ansonia"), a limited partnership which made real estate investments. (Compl. ¶ 42).[1]

On April 2, 2007, the Company announced that, after an internal review, it was restating its consolidated statements of cash flows to reclassify certain items among operating, investing and financing activities. (Id. ¶ 50).

On August 9, 2007, the Company announced that it was "experiencing liquidity issues caused by the sudden and rapid deterioration in the real estate credit markets." (Id. ¶ 60).

Following the Company's August 9 announcement, Plaintiff initiated this lawsuit, asserting two claims under the Securities Exchange Act of 1934: (i) a Section 10(b) claim against Tarragon and three of its executives – Defendants Friedman (Chairman and CEO), Rothenberg (President and COO), and Pickens (CFO);[2] and (ii) a Section 20(a) "control person"

---

[1] The Complaint is attached as Exhibit A to the Declaration of Daniel R. Marcus in Support of the Tarragon Defendants' Motion to Dismiss the Amended Class Action Complaint, dated Apr. 4, 2008 ("Marcus Decl.").
[2] Friedman, Rothenberg and Pickens are referred to collectively herein as "the Individual Defendants."

claim against Friedman and Beachwold Partners, L.P. ("Beachwold"), a limited partnership owned by Friedman and members of his family.

The Complaint, however, fails to set out any particularized facts which would show that Tarragon's two restatements or its liquidity issues are evidence of fraud. Instead, the Complaint relies upon nothing more than Tarragon's own public statements, and then alleges in a conclusory fashion – with no supporting facts – that the Tarragon Defendants "knew" that Tarragon's financial statements contained errors and concealed facts. Indeed, as the Complaint plainly states, *every* fact alleged by Plaintiff (aside from the allegations regarding Plaintiff himself) is alleged "upon information and belief," rather than on the first-hand knowledge of anyone directly – or even indirectly – involved in Tarragon's affairs. (Id. ¶ 1). Nowhere does the Complaint contain the specificity required by the PSLRA.

Nor does Plaintiff adequately plead scienter. Plaintiff puts forth no facts showing conscious misbehavior or recklessness. All Plaintiff asserts is that the Individual Defendants had a general knowledge of corporate affairs, which has repeatedly been held insufficient to plead scienter. Plaintiff also alleges "motive" to commit fraud by relying on vague non-specific assertions that could apply to any company, such as that bonuses and debt covenants could be affected by financial performance. Plaintiff further points to three corporate transactions that utilized Company stock, but such allegations are insufficient to plead motive unless they evince a sustained program of multiple acquisitions with stock that is not present here. Indeed, weighing against Plaintiff's attempt to manufacture a motive to commit fraud, are the facts that, during the class period, *Tarragon purchased over 1.6 million shares of its own stock for over $27 million,* and the Individual Defendants were generally increasing their holdings in Tarragon stock. In

sum, the allegations in the Complaint do not come close to giving rise to the strong inference of scienter required by the PSLRA. Accordingly, the Complaint should be dismissed.

## STATEMENT OF FACTS

*Tarragon's Announcements*

Tarragon engages in homebuilding, and real estate development and services. (See Marcus Decl., Exh. B (2006 Form 10-K at 5)).[3] A number of Tarragon's properties are developed through joint venture partnerships with others. (Compl. ¶ 75). In 1997, Ansonia was formed as one such partnership. (Id. ¶ 76). In 2004, the Federal Accounting Standards Board ("FASB") enacted a new rule – FASB Interpretation 46(R) – that changed the standards for consolidation of such partnerships. (Id. ¶ 73). As a result, Tarragon consolidated several of its joint ventures starting in 2004, but not Ansonia. (Id. ¶ 75). The Company's annual financial statements for 2004 and 2005 showed which partnerships had been consolidated – and which ones had not. (See Marcus Decl., Exh. C (2005 10-K at 9, 83); Exh. D (2004 10-K at 41, 82)). Tarragon's financial statements from 2004 through the first quarter of 2006 made extensive disclosures about Ansonia, but did not consolidate it. (See Marcus Decl., Exh. C (2005 Form 10-K at 44-45, 82-83); Exh. E (Form 10Q for 1Q 2006 at 9-11)).

On August 23, 2006, Tarragon announced that "as a result of a review of the accounting for the investment in Ansonia by management and the Company's independent accountants, the audit committee has decided that the Company will consolidate Ansonia's operations," and restate its financial results for 2004, 2005, and the first quarter of 2006.

---

[3]  In support of this motion, the Tarragon Defendants rely on various public filings, as well as public announcements by Tarragon explicitly referred to in the Complaint, all of which this Court may consider on a motion to dismiss. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); I. Meyer Pincus & Assocs., P. C. v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir. 1991); In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 383 (S.D.N.Y. 2003).

(Compl. ¶ 42). The consolidation increased the Company's assets by around $300 million, increased its liabilities by approximately $400 million (based on Ansonia's primarily non-recourse debt), and decreased cumulative earnings by about $75 million. (Id.)

On April 2, 2007, the Company announced that it was restating its consolidated statements of cash flows for 2004 and 2005 to reclassify certain items. (Id. ¶ 50). As the Company explained, management had reached this conclusion after reviewing the statements of cash flows and applicable accounting standards, as well as the presentation of other companies. (Id.) The restatement did not affect the net change in cash for either 2004 or 2005, and had "no impact on the Company's consolidated balance sheets, consolidated statements of income and related earning per share amounts or consolidated statements of shareholders' equity." (See Marcus Decl., Exh. F (Apr. 2, 2007 Form 8-K) at 2).

On August 9, 2007, as the American economy was beginning to feel the full effects of what has become known as the "subprime mortgage crisis," the Company announced that it was "experiencing liquidity issues caused by the sudden and rapid deterioration in the real estate credit markets." (Compl. ¶ 60). As a result, the Company delayed the filing of its second quarter 10-Q "to provide for additional time . . . to finalize its evaluation of property impairment charges and other write-downs necessitated by the recent decision to sell certain properties under current adverse market conditions." (Id.) The Company further explained:

> Tarragon's business has been adversely affected by the continuing and accelerated deterioration of the homebuilding industry in the markets in which Tarragon operates, and in the Florida market in particular. These conditions have led to declines in new home sales, increased use of sales discounts and other incentives and increased interest and other carrying costs, and have adversely affected Tarragon's gross margins from homebuilding sales as well as its overall liquidity situation. . . .

> These factors, combined with the inability to obtain anticipated
> loan modifications and additional financing, have materially
> affected Tarragon's liquidity, including the ability to repay existing
> indebtedness, as it becomes due . . . and raise doubt about
> Tarragon's ability to continue as a going concern.

(Id.)

On December 24, 2007, Tarragon filed Form 10-Q's for the second and third quarters of 2007. (Id. ¶¶ 66-67). Those filings disclosed how the rapid deterioration of the real estate credit markets in the summer of 2007 had affected Tarragon, specifically its ability to obtain financing and maintain compliance with its debt obligations. (Id.; see also Marcus Decl., Exh. G (2Q 2007 10-Q at 9)). These quarterly filings also disclosed that starting in June 2007, the Company had experienced increased buyer defaults at its One Hudson Park development in New Jersey, and that Tarragon had recorded allowances of $17.9 million and $7.7 million in the second and third quarters of 2007, respectively, as a result of these defaults. (Compl. ¶¶ 66-67).

*Plaintiff's Allegations*

Plaintiff alleges that the Tarragon Defendants committed securities fraud. But the Complaint merely recites Tarragon's previously-reported financial results and repeats the facts Tarragon announced on August 23, 2006, April 2, 2007, and August 9, 2007 – i.e., that Tarragon was restating prior financial statements to consolidate Ansonia and reclassify certain cash flows, and that Tarragon was experiencing liquidity issues. Then the Complaint baldly asserts – without any supportive facts – that the restatements evidence fraud at the Company and that there had previously been a fraudulent concealment of liquidity issues.

Thus, Plaintiff alleges that all of Tarragon's financial statements from year-end 2004 to its August 9, 2007 announcement were false and misleading, because they failed to disclose that the Company lacked adequate internal controls and failed to comply with Generally Accepted Accounting Principles ("GAAP") to the extent that they did not consolidate Ansonia

and misclassified items in the cash flow statements. (Id. ¶¶ 68-85). But Plaintiff's only support for these assertions is Tarragon's own public statements to the effect that management and the audit committee had decided on restatements following internal reviews (id. ¶¶ 50, 60), and a report that the Public Company Accounting Oversight Board criticized Tarragon's auditor, Grant Thornton LLP, for failing to identify an accounting error. (Id. ¶ 102).

Plaintiff further alleges that the Company: (i) failed to timely take impairment charges; (ii) improperly used the percentage-of-completion method in recognizing revenue; (iii) failed to disclose liquidity issues; (iv) was no longer in compliance with certain debt covenants by June 30, 2007; and (v) made statements about its 2007 results that lacked a reasonable basis. (Id. ¶ 63). The only supposed support for any of these allegations, however, is simply Tarragon's own August 9, 2007 announcement and its subsequently released quarterly financial statements. (Id. ¶¶ 60, 66, 67). Those statements reflect only that Tarragon's business and liquidity were being negatively impacted by the economic crises in the real estate, credit, and mortgage industries. They contain nothing from which any inference of scienter can be raised – never mind the "strong" inference required by the PSLRA.

Under the heading "Additional Allegations Concerning Scienter," the Complaint attempts to buttress its conclusory assertion that the Tarragon Defendants "knew" that Tarragon's financials were misstated by alleging:

- Tarragon used its stock as currency to acquire assets and reduce debt;

- the Tarragon Defendants were motivated to misrepresent Tarragon's financial statements to assure compliance with debt covenants;

- Tarragon's stock price was a material factor in determining bonuses;

- a "substantial portion" of Defendant Friedman's wealth was "tied up in Tarragon common stock which was used as collateral for personal loans"; and

- Defendants Friedman and Pickens signed certifications of the financial statements.

(Id. ¶¶ 98-101). These disparate and conclusory assertions are insufficient to meet the stringent requirements of the PSLRA and Rule 9(b).

Though Plaintiff has had several months in which to conduct his "investigation" into Tarragon, he has been unable to uncover the existence of any fraud. (Indeed, Plaintiff's "investigation" consisted of nothing more than reading the Company's SEC filings and press releases. (Id. ¶ 1)). The fact that a company has restated prior financials is not a sufficient basis for a securities fraud claim, nor is the fact that a company was negatively impacted by a significant downturn in the industry in which it operates. Because Plaintiff does not set forth facts showing that any fraud occurred at Tarragon, the Complaint should be dismissed.

## **ARGUMENT**

### I. **PLAINTIFF DOES NOT PLEAD FRAUD WITH PARTICULARITY OR RAISE THE STRONG INFERENCE OF SCIENTER REQUIRED BY THE PSLRA**

Fed. R. Civ. P. R. 9(b) requires Plaintiff to plead particularized facts sufficient to support their fraud allegations, including specifying the alleged fraudulent statements, who made them, where and when, and explaining why the statements were fraudulent. See, e.g., In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365, 372 (S.D.N.Y. 2007). The PSLRA imposes even stricter pleading standards, and requires plaintiffs to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, *and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.*" 15 U.S.C. § 78u-4(b)(1) (emphasis added). Plaintiff must also allege particularized facts raising a "strong inference" that the defendants acted with scienter, 15 U.S.C. § 78u-4(b)(2), and to qualify as "strong," an inference of scienter "must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling . . . and at least as compelling as any opposing inference one

could draw from the facts alleged." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct.

2499, 2510 (2007).

**A.    The Amended Complaint Fails To Allege Facts Describing
The Alleged Fraud With The Level Of Particularity Required
By Rule 9(b) And The PSLRA**

To meet the requirements of Rule 9(b), the Complaint must explain why the

complained-of statements were fraudulent. See In re Sierra Wireless, 482 F. Supp. 2d at 372.

And, under the PSLRA, if the Complaint makes such allegations upon information and belief, it

must state with particularity all facts upon which that belief is formed. See 15 U.S.C. § 78u-

4(b)(1). Here, Plaintiff has failed to sufficiently plead with factual particularity that any of

Tarragon's public statements were fraudulent.

**1.    The Allegations Regarding Tarragon's Restatements Do Not Plead With
Particularity Facts Giving Rise To A Fraud**

It is well settled that the mere fact of a restatement is not a sufficient basis on

which to state a securities fraud claim because a restatement is proof only of error and not fraud.

See Stevelman v. Alias Research Inc., 174 F.3d 79, 84 (2d Cir. 1999) (fact of restatement does

not adequately plead conscious misbehavior or recklessness); In re Carter-Wallace, Inc. Sec.

Litig., 150 F.3d 153, 157 (2d Cir. 1998) ("[O]ne cannot state a claim for securities fraud merely

by alleging a GAAP violation."); In re TwinLab Corp. Sec. Litig., 103 F. Supp. 2d 193, 207

(E.D.N.Y. 2000) (same). When a company has issued a restatement, a plaintiff must allege

particularized facts showing that the original financial statements were issued with fraudulent

intent. See In re BISYS Sec. Litig., 397 F. Supp. 2d 430, 447-48 (S.D.N.Y. 2005).

Here, Plaintiff does not allege *any* particular facts showing that Tarragon's

original financial reports were issued with fraudulent intent. Instead, he alleges in the most

conclusory fashion that the Tarragon Defendants "knew" that Ansonia should have been

consolidated and that cash flows should have been reclassified. (Compl. ¶¶ 107, 110, 111). However, Rule 9(b) and the PSLRA require particularized facts that would support a finding that the Tarragon Defendants "knew" these facts. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129 (2d Cir. 1994). Since the Complaint contains no such particularized facts, it fails to state a Section 10(b) claim as a matter of law.

Moreover, the facts regarding Tarragon's restatements are not suggestive of a fraud. On the contrary, Tarragon's decision not to consolidate Ansonia was *fully disclosed* in its *original* financials, which referred to Ansonia as an unconsolidated partnership and provided significant financial information about Ansonia, including its total assets and liabilities, the amount of Tarragon's ownership interest, and the portion of Tarragon's net income that came from Ansonia. (See Marcus Decl., Exh. C (2005 10-K at 9, 30, 38, 83-86)). In addition, the fact that Grant Thornton LLP reviewed and certified Tarragon's original financial statements, shows that the original decision not to consolidate was *not* an obvious error, and certainly does not evidence fraudulent intent.

Similarly, with respect to the cash flow restatement (Compl. ¶¶ 50-51), Plaintiff pleads *zero* facts from which it could be inferred that it was the result of a fraud. Based on Tarragon's public statements – which is the only basis upon which Plaintiff pleads any of the non-Plaintiff-specific facts in the Complaint (id. ¶ 1) – Tarragon decided on the reclassification after a review of both the relevant accounting guidance and the presentation of cash flows by other companies. (Id. ¶ 50). There is not only no reason to believe that the earlier classifications were fraudulent, there is no evidence that the reclassification was material. On the contrary, the cash flow restatement had *no effect* on Tarragon's net change in cash for either 2004 or 2005,

and had no impact on its consolidated balance sheets, statements of income, earnings per share amounts or statements of stockholders' equity. (See Marcus Decl., Exh. B (2006 10-K at 117)).

In sum, the bare fact that Tarragon restated its financial statements is not sufficient to plead a Section 10(b) claim. To state a viable claim, Plaintiff must plead with particularity facts that would show the restatements arose from a fraud rather than a mistake. Because Plaintiff fails to do so, his Section 10(b) claim must be dismissed.

> 2. Plaintiff's Additional Allegations Regarding So-Called "Concealed Facts" Fail To Satisfy The Pleading Requirements For A Securities Fraud Claim

Apparently recognizing that the existence of the restatements is insufficient to plead a securities fraud, Plaintiff attempts to bolster his Complaint by alleging that the following purported "true facts" were allegedly "known by defendants but concealed":

> (i)   Tarragon's purported failure to timely take impairment charges;
>
> (ii)  Tarragon's liquidity issues;
>
> (iii) the Company's allegedly improper revenue recognition;
>
> (iv)  Tarragon's failure to comply with certain debt covenants by June 30, 2007; and
>
> (v)   the supposed lack of any reasonable basis for making projections about Tarragon's 2007 results.

(Compl. ¶ 63). However, once again, alleging that the Tarragon Defendants "knew" of alleged misstatements is a bare conclusion, patently insufficient to state a securities fraud claim. See Shields, 25 F.3d at 1129 (allegations that defendant "knew" statements were misleading or "knew but concealed" facts are "so broad and conclusory as to be meaningless" (quotations omitted)). What Plaintiff must do, but does not even attempt to do in this Complaint, is set forth particularized facts that would *show* that the Tarragon Defendants "knew." See id. For this reason alone, the Section 10(b) claim fails.

-10-

Likewise, Plaintiff, who pleads this allegation (and all of his allegations not personal to himself) upon "information and belief" (Compl. ¶ 1), does not state a source of information for his conclusory allegation that the Tarragon Defendants "knew" these alleged facts nor, for that matter, does he cite a source of information for the truth of these allegedly concealed "facts." See 15 U.S.C. § 78u-4(b)(1) (if allegation is made on information and belief, complaint must state with particularity "all facts on which that belief is formed"); In re Initial Public Offering Sec. Litig., 241 F. Supp. 2d 281, 354-55 n.88 (S.D.N.Y. 2003) (noting that a prefatory statement in first paragraph of complaint "clearly does not satisfy the PSLRA's information and belief pleading requirements" (internal quotations omitted); see also Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 999 n.1 (2d Cir. 1988) (noting general rule "that fraud allegations premised upon information and belief do not satisfy Rule 9(b)").

In addition, with respect to these allegations, Plaintiff fails to plead particularized facts showing that the Company's statements were materially false in the first instance.

(a)  Plaintiff Does Not Allege Facts Showing That Tarragon's Impairment Charges And Other Write-Downs Were Untimely

To begin, the Complaint offers *no* facts – much less particular ones – showing that there was anything untimely about Tarragon's impairment charges and write-downs. The Company announced on August 9, 2007 that it intended to take impairment charges in light of "the *recent* decision to sell certain properties under *current* adverse market conditions." (Compl. ¶ 60 (emphasis added)). Plaintiff does not allege any facts showing that the Company should have announced property impairment charges and write-downs earlier than it did. Moreover, the allegation lacks the requisite particularity in that Plaintiff does not explain: what statements were misleading; which impairments or write-downs were untimely; what was the amount and

-11-

description of each impairment or write-down that should have been taken earlier, or when each impairment was in fact taken as compared to when it should have been taken.

> (b)    Plaintiff Alleges No Facts Showing That Tarragon "Concealed" Liquidity Issues

Similarly, Plaintiffs fails to state with particularity what were the liquidity issues that Tarragon allegedly concealed, when each of these alleged liquidity issues arose, and what statements were rendered false by this alleged concealment. Tarragon announced on August 9, 2007 that it was facing serious liquidity issues. (Compl. ¶ 60). Plaintiff alleges nothing that would show that it was concealing material liquidity issues before that date.

> (c)    Plaintiff Alleges No Facts Showing That Tarragon Improperly Recognized Revenue

Plaintiff alleges that Tarragon improperly recognized revenue according to the "percentage-of-completion method when it lacked a reasonable assurance that persons making initial deposits for purchases of condominiums would follow through on their initial commitments." (Compl. ¶ 63(d); see also id. ¶ 53). Again, Plaintiff does not allege any particularized facts to support this conclusory allegation.

The Complaint refers several times to one of Tarragon's condominium developments – One Hudson Park in New Jersey – and alleges in a conclusory fashion that "the relatively small deposits placed on new condominium units in projects such as One Hudson Park were insufficient to demonstrate" that buyers would actually follow through on their purchase commitments. (Id. ¶ 53). Plaintiff, however, does not provide a factual basis for his characterization of the One Hudson Park deposits as "relatively small," and does not point to any specific facts showing that Tarragon did not have a reasonable basis to recognize revenue when it did. See Novak v. Kasaks, 216 F.3d 300, 309 (2d Cir. 2000) (where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements

containing this information).  Although Tarragon announced on December 24, 2007 that it had

recorded a $19.4 million allowance for estimated losses with respect to One Hudson Park, the

discussion accompanying that disclosure clearly stated that the allowance resulted from defaults

that occurred beginning in *July 2007*.  (See Marcus, Decl., Exh. G (2Q 2007 10-Q at 51)).

Plaintiff offers no facts showing that Tarragon's *original* revenue recognition for One Hudson

Park was fraudulent; rather, he attempts to allege "fraud by hindsight."  It is well-settled that

such allegations are insufficient.  See Novak, 216 F.3d at 309; see also Honeyman v. Hoyt (In re

Carter-Wallace, Inc. Sec. Litig.), 220 F.3d 36, 42 (2d Cir. 2000).

> (d)    Plaintiff Fails To Allege That Tarragon Concealed Non-
>         Compliance With Debt Covenants As Of June 30, 2007

On August 9, 2007 – six days *before* Tarragon's 10-Q for the quarter ending June

30, 2007 was scheduled to be filed – the Company disclosed that it was "currently not in

compliance with a financial covenant" and would "not be in compliance with certain net worth

maintenance and other financial covenants contained in this and other debt agreements."

(Compl. ¶ 60).  Thus, it cannot be said that Tarragon concealed non-compliance with debt

covenants.  Moreover, Plaintiff's allegation is insufficiently particularized in that he does not

explain with what debt covenants Tarragon was not in compliance, nor does Plaintiff enumerate

what statements by Tarragon were made allegedly false by this purported concealment.

> (e)    Plaintiff's Allegations Regarding 2007 Projections Lack
>         Particularity

Plaintiff alleges that Tarragon had no reasonable basis for projections it made in

July 2007 regarding its 2007 results "given the increased volatility in the homebuilding industry

and the real estate credit markets."  (Compl. ¶ 63(g)).  However, Plaintiff does not explain which

projections allegedly lacked a reasonable basis, how they purportedly lacked a reasonable basis,

or how the "increased volatility" caused these unspecified statements to lack a reasonable basis

*at the time they were made.* See Shields, 25 F.3d at 1129 (plaintiff failed to plead scienter by alleging that projections later turned out to be incorrect). Thus, he has not pleaded with the requisite particularity false statements in the first instance, much less facts that would show that the unspecified statements were made with fraudulent intent.

Moreover, any projections Tarragon made in July 2007 were accompanied by significant cautionary language that "actual results and the timing of certain events could *differ materially from those projected*." (See Marcus Decl., Exh. H (7/25/2007 press release) at 3 (emphasis added); Exh. I (7/10/2007 press release) at 3 (emphasis added)). The releases went on to list several factors that had the potential to affect the Company's projected results. (See id.) "Forward-looking statements," like these, cannot be the basis of a securities fraud claim if such statements are "identified as a forward-looking statement[s], and [are] accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements." 15 U.S.C. § 78u-5(c)(1)(A)(i); see also In re Nokia Oyj (Nokia Corp.) Sec. Litig., 423 F. Supp. 2d 364, 398-99 (S.D.N.Y. 2006). Tarragon's July statements were explicitly identified as "forward-looking statements," and were accompanied by cautionary language. (See Marcus Decl., Exh. H at 3; Exh. I at 3). Thus, they cannot be the basis of a securities fraud claim.

### B.    The Amended Complaint Fails To Raise Any Inference Of Scienter, Much Less The Strong Inference Required By The PSLRA

To state a claim of securities fraud, under the PSLRA, plaintiffs must plead "with particularity" facts giving rise to a "strong inference" that the defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2); see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007); Novak, 216 F.3d at 311. In the Second Circuit, "[t]he plaintiff may satisfy this requirement by alleging facts (1) showing that the defendants had both motive and opportunity to

commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." ATSI Commc'ns, Inc., 493 F.3d at 99; see also Ganino v. Citizens Utils. Co., 228 F.3d 154, 168-69 (2d Cir. 2000). "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." Tellabs, 127 S. Ct. at 2510. For an inference of scienter to be strong, "a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Id. Plaintiff fails to meet this burden.

1.    Plaintiff Has Failed To Adequately Plead A Fraudulent Motive

As the Second Circuit has repeatedly held, in order to plead scienter based on a defendant's "motive and opportunity," a plaintiff's allegations must show that the defendants benefited in a "concrete and personal way from the purported fraud." Novak, 216 F.3d at 307-08. "Motives that are generally possessed by most corporate directors and officers do not suffice." Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001). Here, Plaintiff's "motive" allegations fall within this category and are thus insufficient to plead scienter. They are also fatally conclusory.

(a)    Tarragon's Use Of Stock To Acquire Assets And<br>Reduce Debt Does Not Raise A Strong Inference of Scienter

First, the Complaint alleges that the Tarragon Defendants "were motivated to misrepresent the true financial condition and state of affairs because they were using Tarragon common stock as currency to acquire assets and reduce debt." (Compl. ¶ 98). In support, Plaintiff points to three transactions over a 17-month period: (i) Tarragon's April 2005 purchase of a 30% interest in Fenwick Tarragon Apartments, LLC in exchange for a $967,000 promissory note secured by 55,402 shares of common stock (id. ¶ 25); (ii) Tarragon's August 2005 conversion of $54.25 million of Senior Convertible Notes into 4,432,181 shares of common

-15-

stock (id. ¶ 31); and (iii) the September 2006 issuance of Tarragon stock to Rohdie LLC ("Rohdie") in connection with Rohdie's right to convert membership units in Tarragon Development Corporation into Tarragon securities. (Id. ¶ 46). The existence of these three transactions, however, does not raise a strong inference that any Defendant acted with scienter.

Although the use of company stock in acquisitions may, in some cases, be sufficient to show scienter, see Rothman v. Gregor, 220 F.3d 81, 93 (2d Cir. 2000), this type of allegation will be deemed sufficient only when defendants have engaged in a sustained program of multiple acquisitions, rather than one or two acquisitions spread out over time. See In re Interpublic Sec. Litig., No. 02 Civ. 6527 (DLC), 2003 U.S. Dist. LEXIS 8844, at *32 (S.D.N.Y. May 29, 2003) (simple purchase of one company does not ordinarily provide sufficient motive); see also In re DRDGold Ltd. Sec. Litig., 472 F. Supp. 2d 562, 570-71 (S.D.N.Y. 2007) (wanting to keep stock price high so company could use inflated stock as capital for acquisitions was insufficient); In re AOL Time Warner Sec. & "ERISA" Litig., 381 F. Supp. 2d 192, 218 (S.D.N.Y. 2004) (desire to effect particular merger does not plead scienter); In re Yukos Oil Co. Sec. Litig., No. 04 Civ. 5243 (WHP), 2006 U.S. Dist. LEXIS 78067, at *57 (S.D.N.Y. Oct. 25, 2006) (artificially inflating company's stock price in order to acquire another company using fewer shares of stock was insufficient); cf. In re Van Der Moolen Holding N.V. Sec. Litig., 405 F. Supp. 2d 388, 410-11 (S.D.N.Y. 2005) (scienter pleaded by allegations that defendant acquired four competitors as part of "a program of strategic acquisitions designed to maintain its position in [the] market").

In this case, there was no sustained program of growth through acquisition, nor did Tarragon acquire any of its competitors using company stock. Indeed, of the three transactions referred to in the Complaint, only two – the purchase of 30% of Fenwick Tarragon

Apartments, LLC and the issuance of shares to Rohdie – could potentially qualify as acquisitions, and in neither of those transactions did Tarragon acquire another company. In the Fenwick transaction, Tarragon already owned 70% of a particular apartment complex and merely purchased the remaining 30% from its joint venture partner. (See Marcus Decl., Exh. B (2006 Form 10-K at 88)). In the Rohdie transaction, Rohdie LLC, a joint venture partner, exercised conversion rights that were granted to it when the venture was established in 2000. (See Marcus Decl., Exh. J (Form 8-K filed Oct. 4, 2006) at 2). The number of Tarragon shares issued to Rohdie was established in the original joint venture agreement. Thus, there was no incentive to inflate Tarragon's stock price in order to reduce the number of shares that would be issued because the number of shares was already fixed. Further, the decision to convert Rohdie's ownership interest in the subsidiary into shares of Tarragon was made by Rohdie, not the Tarragon Defendants. Therefore, the conversion cannot be viewed as part of any strategic plan by Tarragon to "grow through acquisition."

Finally, Plaintiff's allegation that the Tarragon Defendants sought to inflate Tarragon's stock price in order to reduce debt via conversion of Senior Convertible Notes (Compl. ¶¶ 31, 98), fails to show a motive to commit fraud. "Courts in this Circuit have consistently held that allegations that a defendant was motivated to commit securities fraud by a desire to reduce its debt burden . . . are insufficient to raise a scienter inference." In re Geopharma Inc., 399 F. Supp. 2d 432, 450 (S.D.N.Y. 2005) (citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 814 (2d Cir. 1996)); see also In re Duane Reade Inc. Sec. Litig., No. 02 Civ. 6478, 2003 U.S. Dist. LEXIS 21319, at *31-32 (S.D.N.Y. Nov. 25, 2003) (rejecting motive allegations based on company's desire to inflate stock in order to pay down debt). All companies seek to acquire financing at the lowest possible

cost and to pay down debt in the most cost-efficient manner. As the Second Circuit has stated, "if scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." San Leandro, 75 F.3d at 814. Because Plaintiff alleges no facts demonstrating that Tarragon's desire to ease its debt burden was in any way different than the desire of all other companies, the fact that Tarragon converted a portion of its Senior Convertible Notes does not raise any inference – much less a strong inference – of scienter.

> (b)    Defendants' Alleged Desire To Maintain Compliance
> With Financial Covenants Is Insufficient To Plead Scienter

Plaintiff alleges that the Tarragon Defendants "were motivated to misrepresent the financial statements of Tarragon in order to assure compliance with various financial covenants." (Compl. ¶ 98). The Complaint, however, does not support this conclusory allegation with any particular facts. It does not allege the existence of any specific financial covenants contained in any specific loan agreements, nor does it allege how the alleged misrepresentations in Tarragon's financial statements "assured compliance" with any financial covenants.

Furthermore, cases recognize that a desire to maintain compliance with loan covenants – even when supported by particularized facts – is insufficient to demonstrate scienter, because such a desire is common to all corporations. See Caiafa v. Sea Containers, Ltd., 525 F. Supp. 2d 398, 412-13 (S.D.N.Y. 2007) ("the alleged desire[] . . . to maintain compliance with the financial covenants of a company loan agreement . . . [is] . . . inadequate to support an allegation of intent to commit fraud"); see also In re Cross Media Mktg. Corp. Sec. Litig., 314 F. Supp. 2d 256, 265 (S.D.N.Y. 2004) (desire to maintain compliance with financial covenants of a company loan agreement is inadequate to plead scienter); Wilson v. Bernstock, 195 F. Supp. 2d 619, 637 (D.N.J. 2002) (same).

    (c)    Plaintiff's Allegation Regarding Bonuses Does Not Raise
            A Strong Inference Of Scienter

The Complaint alleges that "a material factor considered in awarding [the Individual Defendants'] annual bonuses was the market price of Tarragon common stock." (Compl. ¶ 99). Plaintiff does not, however, allege *any* facts supporting this conclusory allegation. Nor does he allege what the bonuses were, or explain why they would be material enough to the Individual Defendants to motivate them to commit fraud.

Moreover, it is well-settled that an allegation that bonuses are dependent on stock price does not raise a strong inference of scienter, because the desire to keep stock prices high to increase executive compensation is recognized as one of the "generally possessed" motives shared by most, if not all, corporate officers and directors. In re Geopharma, 399 F. Supp. 2d at 442 (citing Kalnit, 264 F.3d at 139); see also Novak, 216 F.3d at 307-08 (desire to make company appear profitable and thus maximize compensation was not sufficient to plead scienter); Acito v. IMCERA Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995) (same).

    (d)    Plaintiff's Allegation That A Substantial Portion Of Friedman's
            Wealth Was "Tied Up" In Tarragon Stock Fails To Plead Scienter

Likewise, the Complaint's allegation that a substantial portion of Defendant Friedman's wealth "was tied up in Tarragon common stock which was used as collateral for personal loans" (Compl. ¶ 100), is unsupported by particularized facts. "[M]ere ownership of stock . . . [is] insufficient to establish motive." Kalnit, 264 F.3d at 141; see also In re Health Mgmt., Inc. Sec. Litig., 970 F. Supp. 192, 204 (E.D.N.Y. 1997) ("[S]tock ownership, alone, does not create a 'strong inference' of [defendants'] motive."). And, the Complaint contains no facts showing the value of Mr. Friedman's Tarragon stock in relation to his overall personal wealth, nor does it plead any facts as to the amount of any personal loans to Mr. Friedman that were secured by Tarragon stock. It is not uncommon for corporate executives to secure personal loans

with shares of company stock, and in the absence of allegations of a particularized motive to keep stock values high, the existence of such loans does not create a strong inference of scienter. See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Dynegy, Inc. (In re Dynegy, Inc.), 339 F. Supp. 2d 804, 899 (S.D. Tex. 2004) (allegation that defendant's pledge of 4.4 million shares of stock as collateral for loan motivated him to undertake fraudulent acts to avoid margin call was too general to raise strong inference of scienter).

       (e)     The Tarragon Defendants' Stock Ownership History Belies
               Any Inference That They Were Motivated To Commit Fraud

           The notion that the Tarragon Defendants had a motive to commit fraud is further undermined by the fact that during the class period the Company bought back over 1.6 million shares of its own stock (at an aggregate price of over $27 million). Indeed, the Company was purchasing its own stock at the same time that it was purportedly using the inflated stock to fund its acquisition of assets. During April 2005 – the month in which Tarragon entered into the Fenwick transaction (Compl. ¶ 25) – the Company spent $456,000 to purchase 24,000 of its own shares. (See Marcus Decl., Exh. K (Form 10Q for 2Q 2005 at 44)). Similarly, in August 2006 – the month in which Tarragon issued shares to Rohdie (Compl. ¶ 46) – the Company bought more than 53,000 shares for over $557,000. (See Marcus Decl., Exh. L (Form 10Q for 3Q 2006 at 51)). Tarragon's significant share repurchases during the class period runs contrary to any alleged motive to inflate the price of the stock.

           Likewise, putting aside the final two days of the class period during which Defendant Friedman's stock was sold in forced margin sales, the Individual Defendants, who were the CEO, COO and CFO of the Company, were increasing their holdings of Tarragon stock. See Burstyn v. Worldwide Xceed Group, Inc., No. 01 Civ. 1125 (GEL), 2002 U.S. Dist. LEXIS 18555, at *16-17 (S.D.N.Y. Sept. 30, 2002) (allegation of scienter inadequate where one

defendant "retained a large percentage of her shares and [another defendant] actually increased his ownership"); Ressler v. Liz Claiborne, Inc., 75 F. Supp. 2d 43, 59-60 (E.D.N.Y. 1998) (noting as "significant" fact that defendants had more shares at end of class period than held at beginning). Indeed, Defendants Pickens and Rothenberg sold *no* shares during the class period, but rather exercised options without selling the stock upon conversion and saw their holdings increase through awards of stock and options. (See Marcus Decl., Exh. M (Form 4's – Pickens's transactions in class period); Exh. N (Form 4's – Rothenberg's transactions in class period)). See In re Credit Acceptance Corp. Sec. Litig., 50 F. Supp. 2d 662, 677-78 (E.D. Mich. 1999) (failure of CFO to sell stock "undermined" fraud theory); In re Glenayre Techs., Inc. Sec. Litig., No. 96 Civ. 8252 (HB), 1998 U.S. Dist. LEXIS 20344, at *13 (S.D.N.Y. Dec. 30, 1998) (no scienter where no stock sales by CEO, CFO or Comptroller), aff'd sub nom., Kwalbrun v. Glenayre Techs., Inc., 201 F.3d 431 (2d Cir. 1999); In re Health Mgmt. Sys., Sec. Litig., No. 97 Civ. 1865 (HB), 1998 U.S. Dist. LEXIS 8061, at *18 (S.D.N.Y. June 1, 1998) (no scienter where CFO sold no stock and bought stock). In addition, both Defendants Rothenberg and Friedman purchased stock during the class period. (See Marcus Decl., Exh. N; Exh. O (Form 4's – Friedman's acquisitions in class period)).[4]

    2.  Plaintiff Does Not Plead With Particularity Facts That Constitute Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness

    Plaintiff's only attempt to show facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness is his reference to the fact that Defendants Friedman and Pickens signed sworn statements regarding the information found in Tarragon's

---

[4] Though some of Friedman's shares were sold at the very end of the class period, such sales were forced sales to meet margin calls and therefore do not raise an inference of scienter. (Compl. ¶ 100). See Druskin v. Answerthink, Inc., 299 F. Supp. 2d 1307, 1337 (S.D. Fl. 2004) (plaintiffs' allegation that board member was forced to sell stock to meet margin call did not support inference of scienter); Coates v. Heartland Wireless Commc'ns, Inc., 26 F. Supp. 2d 910, 919 (N.D. Tex. 1998) (stock sale to cover margin call was involuntary and thus did not support inference of motive to inflate price of stock).

financial statements. (Compl. ¶ 101). Plaintiff alleges that these statements demonstrate their knowledge of Tarragon's financial condition and that such knowledge is somehow evidence of scienter. (Id.) However, courts routinely reject the argument that simply being a key corporate figure who signed and/or certified financial statements is enough to adequately plead scienter. See In re Openwave Sys. Sec. Litig., No. 07 Civ. 1309 (DLC), 2007 U.S. Dist. LEXIS 80558, at *39-40 (S.D.N.Y. Oct. 31, 2007); see also In re Goodyear Tire & Rubber Co. Sec. Litig., 436 F. Supp. 2d 873, 896 (N.D. Oh. 2006); In re NDCHealth Corp., Inc. Sec. Litig., No. 1:04-cv-0970-WSD, 2005 U.S. Dist. LEXIS 43860, at *27-29 (N.D. Ga. July 27, 2005).

Furthermore, the Complaint nowhere alleges that the Tarragon Defendants had specific data or knowledge that contradicted their public statements, nor does it point out any "red flags." See Ressler, 75 F. Supp. 2d at 52 ("[T]o withstand a motion to dismiss, a plaintiff must detail specific contemporaneous data or information known to the defendant that was inconsistent with the representation in question."). The allegation that Friedman and Pickens signed the financials and the certifications required by the Sarbanes-Oxley Act of 2002 amounts to an assertion that they, as officers of Tarragon, had access to general information about Tarragon. However, such general knowledge does not equate to specific knowledge that any of Tarragon's public statements was false. See Marcus v. Frome, 275 F. Supp. 2d 496, 502 (S.D.N.Y. 2003).

Because the Complaint fails to plead facts raising a strong inference that the Tarragon Defendants acted with scienter, the Section 10(b) claim must be dismissed as to them.

## II.    PLAINTIFF'S SECTION 20(A) CLAIM FAILS AS WELL

Nor does Plaintiff fare any better with Count II of the Complaint, which alleges that Defendants Friedman and Beachwold are liable to the Class as "control persons" under

Section 20(a) of the Exchange Act.  The Second Circuit has held that in order to state such a claim, a plaintiff must allege:  (i) a primary violation by the controlled person, (ii) control of the primary violator by the targeted defendant, and (iii) that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person.  See Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir. 1998); SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472 (2d Cir. 1996).  Plaintiff's Section 20(a) claim fails on all three counts.

First, because, for the reasons explained in Part I, supra, Plaintiff has not stated a viable claim that Tarragon – the allegedly controlled person – committed a primary violation, no secondary or control person liability can arise.  See Rombach v. Chang, 355 F.3d 164, 177-78 (2d Cir. 2004); First Jersey, 101 F.3d at 1472.

Second, the Complaint does not allege facts demonstrating that either Friedman or Beachwold was, in some meaningful sense, a culpable participant in any purported fraud.  See Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) (plaintiff must plead "culpable participation" to state Section 20(a) claim, and such participation must be pled with particularity pursuant to Rule 9(b)); Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 484 (S.D.N.Y. 2001) (same).  The mere fact that Friedman is Tarragon's Chairman and CEO is insufficient to plead culpable participation.  See, e.g., In re Twinlab, 103 F. Supp. 2d at 208 (dismissing Section 20(a) claim because "plaintiffs do not specifically allege facts demonstrating that the officers of Twinlab culpably participated in the scheme"); In re Livent Sec. Litig., 78 F. Supp. 2d 194, 222 (S.D.N.Y. 1999).  And, with respect to Beachwold, Plaintiff simply alleges that Beachwold owned shares of Tarragon stock, that Friedman was the sole general partner of Beachwold, and that Friedman's family members were the other Beachwold partners.  (Compl. ¶ 12).  The

Complaint does not contain *any* facts indicating that Beachwold had any sort of participation in Tarragon's affairs, much less a culpable participation in a fraud.

Third, Beachwold is not a "control" person within the meaning of Section 20(a). See 17 C.F.R. § 230.405. The fact that Beachwold owned Tarragon stock, standing alone, is insufficient for control person liability, see In re Twinlab, 103 F. Supp. 2d at 209 (partnerships were not control persons simply by owning large block of stock), as is the fact that Beachwold was controlled by Friedman. See Roberts v. Heim, 670 F. Supp. 1466, 1487 (N.D. Cal. 1987) (fact that two individuals controlled both primary violator partnerships and licensors that were alleged to be control persons "does not mean that the licensors therefore also controlled the partnerships"); see also Yuan v. Bayard Drilling Techs., Inc., 96 F. Supp. 2d 1259, 1271 (W.D. Okla. 1999) (allegations that (i) president of control person entity was director of primary violator and (ii) control person entity was minority shareholder of primary violator were insufficient to state control person claim). Plaintiff here alleges no facts regarding the amount of stock controlled by Beachwold itself (as distinct from Friedman), any control that Beachwold exercised over Tarragon's affairs, or any role that Beachwold played in the issuance of the alleged misstatements. Because Plaintiff alleges no facts showing that Beachwold actually exercised control over Tarragon, he fails to state a claim against Beachwold under Section 20(a).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed as to the Tarragon

Defendants.


Dated: New York, New York
       April 4, 2008

                                    CURTIS, MALLET-PREVOST,
                                    COLT & MOSLE LLP


                                    By:_____
                                        Eliot Lauer
                                        Theresa A. Foudy
                                        Daniel R. Marcus
                                    101 Park Avenue
                                    New York, New York  10178-0061
                                    Tel:  (212) 696-6000
                                    Fax:  (212) 697-1559

                                    *Attorneys for Defendants Tarragon Corporation,
                                    William S. Friedman, Robert P. Rothenberg, Erin
                                    Davis Pickens, and Beachwold Partners, L.P.*