UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                                               :   **Electronically Filed**
                                                               :
                                                               :   07 Civ. 7972 (PKC)
                                                               :
In re TARRAGON CORPORATION                                     :
SECURITIES LITIGATION                                          :
                                                               :
                                                               :
                                                               :
                                                               :
                                                               :
---------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF GRANT THORNTON LLP'S MOTION
TO DISMISS THE AMENDED COMPLAINT**


WINSTON & STRAWN LLP
200 Park Avenue
New York, New York  10166
(212) 294-6700

35 West Wacker Drive
Chicago, Illinois  60601
(312) 558-5600

*Attorneys for Defendant
Grant Thornton LLP*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

ARGUMENT...................................................................................................................................2

    I.    The complaint fails to plead fraud with particularity...............................................2

    II.    The *Stoneridge* case made the pleading burden *more* strenuous, not less so ..........4

    III.    The complaint fails to allege facts sufficient to support a strong inference of scienter....................................................................................................................6

    IV.    Lead Plaintiff has failed to plead loss causation......................................................8

CONCLUSION..............................................................................................................................10

## **PRELIMINARY STATEMENT**

Lead Plaintiff's complaint all but ignores Grant Thornton, and his brief opposing Grant Thornton's motion to dismiss concedes away most of his case. He filed this lawsuit on behalf of a putative class of stockholders who purchased Tarragon stock between January 5, 2005 and August 9, 2007, based on losses suffered in the collapse of Tarragon's stock at the end of that period. Am. Compl. ¶¶ 11, 92-97. Given all the concessions and limitations in his opposition brief, however, it is now clear that Lead Plaintiff's claim against Grant Thornton is based on only one alleged misstatement: the 2005 audit opinion, as it relates to Tarragon's separate and unconsolidated reporting of the financial results of the investment partnership Ansonia. And when he does attempt to cast his net more widely—claiming that Grant Thornton should also be held liable for "deceptive conduct" based on its mere review of other, unaudited reports—he twists Supreme Court case law beyond all recognition and asks this Court to ignore binding Second Circuit authority.

Even with respect to the 2005 audit opinion, Lead Plaintiff has failed to state a claim. He says almost nothing about Grant Thornton's 2005 audit, and his allegations do not come close to meeting the heightened pleading standards for falsity and scienter. Moreover, Lead Plaintiff does not even attempt to link the 2007 stock price collapse to the 2005 audit opinion, limiting his claim to a modest and temporary price decline that occurred when the consolidation issue became public a full year before the collapse. And even if his allegations of price *decline* were sufficient, he still has not alleged any price *inflation* related to any statement by Grant Thornton in particular. For all these reasons, even the limited claim that Lead Plaintiff still asserts against Grant Thornton is fatally deficient. As repleading would be futile (*see In re Merrill Lynch & Co. Research Report Sec. Litig.*, 07 Civ. 6677 (JFK), 2008 U.S. Dist. LEXIS 37993, at *47-48 (S.D.N.Y. May 8, 2008)), the claim against Grant Thornton should be dismissed with prejudice.

## ARGUMENT

### I. The complaint fails to plead fraud with particularity.

Lead Plaintiff has all but conceded that he cannot plead a misstatement by Grant Thornton with the particularity required by Rule 9(b). The only statement by Grant Thornton that he still claims was false is its audit opinion on Tarragon's 2005 Form 10-K. *See* Pl. Mem. 3 ("The Complaint alleges the specific statement at issue made by Grant Thornton (Complaint ¶ 37) as well as the reasons why the statement was false …."); Am. Compl. ¶ 37 (referring only to the audit opinion on the 2005 financial statements). Thus Lead Plaintiff has abandoned any claim of misstatement by Grant Thornton related to its 2004 and 2006 audit opinions or Tarragon's unaudited quarterly financial reports. *See* Am. Compl. ¶ 13. Moreover, according to Lead Plaintiff, even the 2005 audit opinion was allegedly false in only one respect: in relation to the financial statements' separate treatment of the Ansonia investment partnership. *See* Pl. Mem. 3-4. His entire case for falsity depends on the restatement relating to Ansonia and on a PCAOB inspection report referenced in a Bloomberg web commentary. *Id.* That report (about an unidentified audit client of Grant Thornton's) identified a departure from GAAP that Lead Plaintiff himself characterizes as relating only to the consolidation issue. *Id.*; Am. Compl. ¶ 102. He does not point to any false statement by Grant Thornton that relates to either the cash flow issue or Tarragon's use of the percentage-of-completion method for revenue recognition.[1]

Even with respect to the Ansonia issue, Lead Plaintiff's allegations are insufficient under Rule 9(b). He does not dispute that whether the audit opinion was false depends on whether

---

[1] Consistent with the complaint (Am. Compl. ¶ 102), the only falsity the brief alleges with respect to the 2005 audit opinion relates to the Ansonia issue and the subsequent restatement to consolidate its results with Tarragon's. Pl. Mem. 1, 3. The percentage-of-completion revenue recognition issue, according to Lead Plaintiff, apparently implicates only the unaudited quarterly financial reports. *Id.* at 2. Although Lead Plaintiff claims that management had previously failed to meet its budgets for recognizing revenues based on percentage-of-completion accounting, he does not contend that Grant Thornton made any false statement in that respect—only that it reviewed the quarterly reports and allegedly knew about the issue some time before the impairment charges in 2007. *Id.*

2

there was a flaw in its stated basis—in other words, on whether and how Grant Thornton's 2005 audit failed to comply with applicable accounting standards. *See* GT Mem. 10; Am. Compl. ¶ 102 (contending that the audit opinion was false because the audit did not comply with GAAS). But he still has not cited any auditing standards that would apply in this circumstance or explained how the 2005 audit departed from such standards.

Lead Plaintiff's block quote from the Bloomberg web commentary—the *only* reference in the complaint to the substance of Grant Thornton's audits—is no substitute for factual allegations. In the first place, Lead Plaintiff does not deny that the quoted commentary is rank hearsay. He also does not deny that the public version of the PCAOB report that was referenced in that web commentary did not identify the audit client involved.[2] The audit client is identified only in the confidential version of the report, which is privileged and—for very important policy reasons—is barred by statute from use in civil litigation. 15 U.S.C. §§ 7214(g)(2), 7215(b)(5)(A) (2006) ("all documents and information prepared" by the PCAOB "in connection with an investigation . . . shall be confidential and privileged as an evidentiary matter (and shall not be subject to civil discovery or other legal process)").

Moreover, even the quotation from the Bloomberg web commentary lacks the particularity required by Rule 9(b). The web commentary asserts only that Grant Thornton failed to obtain sufficient evidence before issuing its 2005 audit opinion and failed to detect what the PCAOB identified as a departure from GAAP. Am. Compl. ¶ 102. Other than copying the commentator's leap to a conclusion about the identity of the client in the report, Lead Plaintiff makes no effort to explain how Grant Thornton's audit here departed from the applicable

---

[2] Lead Plaintiff is incorrect in stating that the PCAOB report itself qualifies as a report of a "public agency." Pl. Mem. 4 (citing Fed. R. Evid. 803(8)). The PCAOB is a non-profit corporation—not a government agency at all. 15 U.S.C. § 7211(b) (2002) (PCAOB is not a government agency).

professional standards. Even the cases he cites require far more detailed allegations than these. *E.g., Kinney v. Metro Global Media, Inc.*, 170 F. Supp. 2d 173, 179 (D.R.I. 2001) (cited in Pl. Mem. 3) ("The Amended Complaint lists a number of auditing standards and principles allegedly violated by [defendant] while conducting its audit…").

In the end, Lead Plaintiff cannot avoid the fact that his complaint all but ignores Grant Thornton and is devoid of detail supporting his contention that the 2005 audit was insufficient. Given that the 2005 audit opinion is now the only alleged misstatement in this case, this Court should dismiss the claim against Grant Thornton on this basis alone.

**II.     The *Stoneridge* case made the pleading burden *more* strenuous, not less so.**

Lacking a false statement to keep Grant Thornton in this case, Lead Plaintiff argues (incredibly) that the Supreme Court recently made it unnecessary to plead such a statement, relying on the Court's recent decision in *Stoneridge Investment Partners, LLC v. Scientific Atlanta, Inc.*, --- U.S. ---, 128 S. Ct. 761 (2008). He contends that *Stoneridge* overruled long-established Second Circuit precedent and now allows him to state a claim against Grant Thornton based merely on its review of Tarragon's unaudited quarterly financial reports and (apparently) its alleged failure to detect a problem with revenue recognition in those reports. Pl. Mem. 2. This remarkable argument turns *Stoneridge* on its head.

*Stoneridge* did not *expand* securities fraud actions; it *narrowed* them. In *Stoneridge*, the Court considered when, if ever, an injured investor may recover under Section 10(b) from a party based on conduct that did not involve a public misstatement. Although the Court acknowledged that conduct can be deceptive (128 S. Ct. at 769), that observation by itself was nothing new. Under Rule 10b-5(a) and (c), deceptive acts and business practices have long been actionable. What was new about *Stoneridge* was the Court's clear statement that courts may not use Rule 10b-5(a) and (c) as an end-run around the substantive requirements for securities fraud actions or

4

the bar on claims for aiding and abetting set forth in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164 (1994). The Court held that if the defendant's conduct was never disclosed to the marketplace, the plaintiff cannot have relied upon it and thus cannot prove the elements of his claim. 128 S. Ct. at 770. In effect, the Court eliminated claims for securities fraud that are based solely on conduct behind the scenes—the very sort of claim that Lead Plaintiff is now trying to assert in this case.

Moreover, nothing in *Stoneridge* indicates that the Court intended to overrule the Second Circuit's bar on undisclosed auditor liability. *See Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007). In *Lattanzio*, the Second Circuit specifically rejected the argument Plaintiff now asserts—namely, that the regulations requiring auditor review of quarterly financial statements give the auditor a duty to disclose falsity in those statements to the public, even when that review does not lead to an audit opinion. *Id.* at 154-56. The statute authorizing those regulations did not provide that auditors would be liable in private securities actions for such reviews, and the Second Circuit refused to accept such a sweeping expansion of Section 10(b)'s private right of action. *Id. Stoneridge* did not purport to reach that issue at all, and it certainly did not say anything that would indicate that it was overruling settled law on the subject.[3]

In any event, Lead Plaintiff has never attempted to plead a "deceptive conduct" claim. He alleges that Grant Thornton reviewed Tarragon's unaudited quarterly statements (Am. Compl. ¶ 13), and he now argues that this review was required by federal regulations (Pl. Mem. 5-6). But neither the complaint nor the brief says anything else about those reviews, what they were required to encompass, or why they were inadequate, much less deceptive. Thus Lead

---

[3] Moreover, taking Lead Plaintiff's argument on the effect of the SEC regulations to its logical end would transform *all* fraud claims against auditors into "conduct" claims. That cannot be what the Supreme Court intended.

5

Plaintiff has not come close to pleading a claim for deceptive conduct or a fraudulent "scheme" based on these alleged quarterly reviews—even if such a claim were available in this Circuit.

**III.    The complaint fails to allege facts sufficient to support a strong inference of scienter.**

Lead Plaintiff also cannot avoid his utter failure to plead scienter. To proceed with a claim, he must plead facts supporting a strong inference of actual knowledge or recklessness that "approximate[s] an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000). And such an inference of recklessness must be more than plausible or reasonable; it must be at least as compelling as any opposing inference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, --- U.S. ---, 127 S. Ct. 2499, 2504-05 (2007).

Lead Plaintiff ignores this standard and argues that all he needs to show is that Grant Thornton had access to relevant information and failed to check it. *See* Pl. Mem. 6, 7. But he has not alleged that Grant Thornton's audits failed to meet the applicable auditing standards in any particular respect. At most, he suggests that Grant Thornton had access to information about Tarragon, did not obtain enough supporting evidence, and failed to detect a violation of GAAP that was later corrected in a restatement. *See* Am. Compl. ¶ 102. Even if those allegations were true—and Grant Thornton does not concede that they are (*contra* Pl. Mem. 7)—they would at most describe negligence or mistake, not recklessness or an "actual intent to aid" in any fraud. A violation of GAAP standing alone cannot support a strong inference of scienter, if there is no allegation of "fraudulent intent." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (cited in Pl. Mem. 6). *Contrast In Re Philip Services Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 475 (S.D.N.Y. 2004) (cited in Pl. Mem. 7) (plaintiffs alleged that an auditor recklessly disregarded various "red flags" including a massive increase in the company's inventories, a qualified opinion by the

former auditor, a whistle-blower letter from a former employee, various other accounting irregularities, and an active fraud by the company). *See generally* GT Mem. 12-13.

Lead Plaintiff does not deny that his complaint includes virtually nothing directed toward Grant Thornton's scienter. Indeed, the portion of his brief devoted to scienter does not contain a single citation to the complaint. *See* Pl. Mem. 6-7. And he completely ignores Grant Thornton's specific arguments about the various accounting issues identified in the complaint, including the Ansonia consolidation. *See* GT Mem. 13-17. Grant Thornton argued at length that the consolidation issue relates to a new and complex accounting standard that involves a series of judgments about which reasonable professionals could disagree. *Id.* at 13-15. In the face of such complexity, Lead Plaintiff cannot satisfy his burden of pleading a strong inference of scienter merely by pointing to the fact that the financial statements were later restated to consolidate Ansonia's results with Tarragon's, rather than reporting them separately. *See* Pl. Mem. 1.

Further, Lead Plaintiff's insinuation that the PCAOB must have found that Grant Thornton had fraudulent intent (Pl. Mem. 7) has no basis in fact and is both misplaced and inappropriate in this setting. As Lead Plaintiff is well aware, the publicly released PCAOB report does not link Grant Thornton to Tarragon in the first place. Moreover, as the PCAOB itself has explained, "[b]oard inspections are not intended to result in conclusive findings, based solely on the inspection, that there has been a violation of law, rules, or professional standards." PCAOB Release No. 104-2004-001 at 8, Ex. G to Malin Decl.. Indeed, the PCAOB's inspection report does not prove even a simple violation of GAAS or GAAP, much less a fraudulent or reckless violation. *Id.* at 7-9 ("[A] violation of professional standards cannot legally be established until certain procedures have been followed. ... If a violation is eventually established, that information will become public through the appropriate disciplinary and

enforcement processes, and not through a Board inspection report."). And again, both the deliberations of the PCAOB and the documents it produces as part of an inspection are privileged as a matter of statute and cannot be used in civil litigation. *See supra* at 3 (citing 15 U.S.C. §§ 7214(g)(2), 7215(b)(5)(A)).

Aside from the Ansonia issue (addressed in Am. Compl. ¶ 102), Lead Plaintiff has alleged no facts at all relating to scienter. As noted above, he has abandoned any claim against Grant Thornton based on the cash flow issue. Pl. Mem. 13 n.6. And while he now contends that the PCAOB report criticized the amount of evidence Grant Thornton obtained with regard to the determination of costs under certain contracts (Pl. Mem. 7 (citing PCAOB Report at 5))—again, without any allegation of fraudulent intent—he does not explain how that relates to revenue recognition methods or to any other accounting issue mentioned in his complaint.

## IV. Lead Plaintiff has failed to plead loss causation.

Both in his complaint and in his opposition to this motion, Lead Plaintiff has failed to demonstrate how the single audit opinion at issue in this case affected the price of Tarragon's stock—either positively or negatively. *See Dura Pharms. v. Broudo,* 544 U.S. 336, 342 (2005) (pleading loss causation requires allegation of both price inflation and price decline related to the subject matter of the alleged misstatement); *accord Lattanzio,* 476 F.3d at 158. A failure to plead loss causation can be the basis for dismissal at the pleading stage, even assuming that loss causation allegations need not be plead with particularity. *See Dura Pharms.,* 544 U.S. at 346; *Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 174 (2d Cir. 2005). And allegations of loss causation must contain at least enough facts to make the claim "plausible." *Bell Atlantic Corp. v. Twombly,* --- U.S. ---, 127 S. Ct. 1955, 1974 (2007).

Lead Plaintiff does not dispute the basic requirements for pleading loss causation. Nor does he make any effort to respond to Grant Thornton's argument that none of its audit opinions

8

are alleged to have had any positive or inflationary impact on the stock price. *See* GT Mem. 18-19. For this reason alone, his claim fails as a matter of law.

Moreover, Lead Plaintiff has not attempted to demonstrate any connection between that 2005 audit opinion and the "steep descent" in Tarragon's stock price that began in July 2007. In light of the market-wide decline in the real estate credit markets during the same period, Lead Plaintiff must specifically allege how his loss was caused by some concealed financial risk, as opposed to those market-wide conditions. *See Lentell*, 396 F.3d at 174.[4] Neither the complaint nor the opposition to this motion connects those dots. And despite his protests, each of the five peer companies Lead Plaintiff cites (Pl. Mem. 12) also experienced a decline. To the extent that Lead Plaintiff claims that Tarragon's decline was steeper than its peers, he has not attempted to attribute the marginal difference in that decline to any alleged misstatement by Grant Thornton.[5]

As for the consolidation of Ansonia—the only issue he attempts to tie to Grant Thornton's 2005 audit opinion—Lead Plaintiff does not describe any decline in stock price that relates to that alleged misstatement in particular. Rather, he lumps that audit opinion together with 11 statements by Tarragon over a lengthy period—including press releases and unaudited quarterly financial reports—and then argues that those statements collectively caused a loss when the stock price declined modestly in August 2006. *See* Pl. Mem. 10 (citing misstatements identified in ten different paragraphs in the complaint); Am. Compl. ¶ 41. Notably, the very case he cites to justify this jumbled approach to pleading explicitly follows established Second Circuit law that a plaintiff must segregate an outside auditor's alleged misstatements from the

---

[4]   Despite Lead Plaintiff's claim to the contrary, Grant Thornton did request that the Court take judicial notice of the decline in the real estate credit market in 2007 and attached a Federal Reserve report on that decline. *See* GT Mem 3, n.2; Ex. I to Malin Decl.

[5]   Lead Plaintiff does contend that the stock price collapse in August 2007 relates to Tarragon's allegedly improper revenue recognition. Pl. Mem. 10. But once again, he has not alleged any statement by Grant Thornton that relates to the revenue recognition issue.

9

company's misstatements and then specifically connect the auditor's statements to a stock loss. *See In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 680 (S.D.N.Y. 2007).

At most, then, Lead Plaintiff has alleged that the August 2006 announcement of the possibility of a restatement related to Ansonia prompted a temporary dip in the stock price. Pl. Mem. 10, Am. Compl. ¶ 41. The modest nature of this price movement was related, undoubtedly, to the fact that Tarragon's 2005 financial statements ***already included*** the relevant underlying information concerning Ansonia, including both its financial results and the fact that Tarragon and related parties controlled it. GT Mem. 6-7, 23. Thus, despite Lead Plaintiff's protest (Pl. Mem. 11-12), this case is indeed analogous to *In re Omnicom Group, Inc. Securities Litigation.*, 541 F. Supp. 2d 546, 2008 WL 243788, at *6 (S.D.N.Y. 2008), as the facts underlying the August 2006 disclosure were already known to the investing public.

In sum, Lead Plaintiff has failed to connect the collapse in Tarragon's stock price in 2007 (at the end of the putative class period) with any misstatement by Grant Thornton. And to the extent that the announcement of a possible restatement related to Ansonia prompted a dip in the stock price in 2006, Lead Plaintiff has not connected that decline to any artificial inflation in the stock price that relates to Grant Thornton's 2005 audit opinion. Thus no matter how narrowly or broadly Plaintiff's claim is construed, it fails for lack of loss causation.

## CONCLUSION

Under binding authority in this Circuit, Lead Plaintiff cannot state a claim based on Grant Thornton's review of unaudited financial statements. As for the 2005 audit opinion, he has failed to plead falsity as required by Rule 9(b) and has not come close to meeting the heightened pleading standard for scienter. He has also cannot tie that audit opinion to the losses for which he seeks damages. Grant Thornton asks that the Court dismiss the claim with prejudice.

Dated: June 6, 2008
    New York, New York

Respectfully submitted,

WINSTON & STRAWN LLP

_____/s/_____
Luke A. Connelly (LC-8462)
Jennifer L. Malin (JM-6963)
200 Park Avenue
New York, New York 10166
(212) 294-6700

Bradley E. Lerman
Linda T. Coberly
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
*Attorneys for Grant Thornton LLP*